James E. ROUNDS and Raymond E. Burger, Wage Earner Trustee for James E. Rounds, Plaintiffs,

v.

COMMUNITY NATIONAL BANK IN MONMOUTH and Monmouth Mobile Homes, Inc., Defendants.

No. 78–1048.

United States District Court, S. D. Illinois, N. D.

Aug. 3, 1978.

Barry M. Barash, Galesburg, Ill., for plaintiffs.

George H. Brinkmann, Monmouth, Ill., David L. Thompson, Rock Island, Ill., for defendants.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

The complaint herein was filed by James E. Rounds and Raymond E. Burger, as wage earner trustee for Rounds, hereinafter "plaintiff," except where the context requires more explicit identification, against Community National Bank in Monmouth and Monmouth Mobile Homes, Inc., hereinafter the "Bank" and the "dealer," respectively, for recovery of the statutory penalty for alleged violations of the Truth in Lending Act. 15 U.S.C. § 1601, et seq. The complaint is fully summarized below in appropriate context.

The Bank filed a motion to strike the complaint as to it. Subsequently thereto, and while that motion was still pending, the Bank filed a counterclaim for judgment upon the contract of indebtedness which underlies the complaint and a cross-complaint against the dealer for a judgment for the Bank's exoneration in the event of a judgment against it upon the complaint. The Bank also filed a petition for reclamation of its security.

The latter petition rests upon the following facts and allegations. The complaint alleges that Rounds filed a petition for voluntary relief on August 18, 1977, under Chapter XIII of the Bankruptcy Act, which led to confirmation of a plan of arrange-

ment and the appointment of Burger as wage earner trustee by the Bankruptcy Court on October 27, 1977. Paragraph 3 of the Bank's counterclaim alleges that the confirmed plan provided that Rounds was to pay the indebtedness to the Bank pursuant to the underlying contract and outside the confirmed plan. The counterclaim, filed May 15, 1978, further alleges that Rounds failed to make the payments due in March and April, 1978, and that he is therefore in default. The counterclaim, therefore, prays judgment against plaintiff for the unpaid balance of the contract and other charges and expenses related to Rounds's alleged default. The reclamation petition, filed at the same time in this cause, prays that the Bank be granted leave to withdraw from its acceptance of the confirmed plan and to repossess the security.

Plaintiff filed a motion to strike the counterclaim, for the reason that the counterclaim is not compulsory and not authorized by 15 U.S.C. § 1640(h), and the dealer filed a motion, likewise grounded upon Section 1640(h), to strike the cross-complaint.

Those motions are now before the court.

### The Bank's Motion to Strike the Complaint

As a preface to consideration of the thrust of the Bank's motion to strike, the heterogenic allegations of complaint herein are summarized as follows. On April 5, 1977, Rounds purchased a used mobile home from the dealer, that purchase being evidenced by a written purchase agreement (Exhibit A to Complaint); that the dealer, in the ordinary course of its business, regularly extends credit or arranges for the extension of credit; that the dealer arranged with the Bank for the extension of credit; that "Bank or dealer," on April 26, 1977, caused debtor to execute a retail installment contract (Exhibit B); that the dealer assigned the installment contract to the bank, which caused a lien to be endorsed upon the title to the vehicle; that Rounds never received a copy of that contract; and that TILA was violated, in that:

a. "Bank and dealer" failed to make the required disclosures on a single sheet of paper;

b. Dealer failed to disclose that the contract would be assigned to the Bank;

c. "Bank" included a charge for credit life insurance in the "finance charge," and that the finance charge is thus overstated and therefore inaccurate;[1] and

d. That by reason of the premises summarized in "c" above, the annual percentage rate is inaccurately stated.[2]

The Bank's motion to strike the complaint as to it is even more prolix than is the complaint. In certain contexts that motion is directed to the legal question whether a claim for TILA violations is stated. In another context it is grounded upon the position that the complaint, with the exhibits attached thereto, reveals that a part of the complaint rests upon an obvious misstatement or a misapprehension of fact.

In those contexts the motion will be treated as a motion for summary judgment. The requirements for so treating the motion are met. A hearing was scheduled upon the motion, at which plaintiff request-

---

1. Subparagraph 11e alleges:

"Bank included a charge of $171.00 for credit life insurance in the finance charge. Bank, in violation of Illinois Revised Statutes 1975, chapter 121½, § 562.9(5), did not clearly and conspicuously disclose in writing to the customer the fact that such credit life insurance is not required by the creditor, and the customer desiring such insurance coverage did not give specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance. The finance charge of $1861.40 [Exhibit B, line 6] is thus overstated by the amount of the credit life insurance premium of $171.00 and is therefore inaccurate, in violation of Illinois Revised Statutes 1975, chapter 121½, § 565(8), 15 U.S.C.S., § 1638(a)(4), (5), (6), & (7), and 12 C.F.R., part 226.8(c)(4), (5), (6), & (7), and 15 U.S.C.S., § 1605(a) & (b)."

2. It is also alleged that there was a failure to disclose "security interests" created by the fact that the contract provided for credit life insurance and casualty insurance upon the mobile home, and further provided that the holder could apply any unearned premiums of such insurance and the proceeds of such insurance in violation of the debt.

ed, and was granted, some 24 days thereafter to file any desired response to this and other motions then pending. That time has passed and no response was filed. Plaintiff's rights are protected by the procedure followed here.

The attenuated allegations of paragraph 11e of the complaint and paragraph 11f allege that the finance charge stated in the disclosure is overstated and that the annual percentage rate is incorrectly stated by reason of the alleged overstatement of the finance charge. A comparison of those allegations with the exhibits to the complaint reveals that they rest upon a misstatement or misapprehension as to the facts of the transaction.

The particular allegation is that the sum of $171 for credit life insurance premiums was included in the finance charge, resulting in the alleged overstatement of the finance charge and the incorrect statement as to the annual percentage rate. It is patent, upon the face of exhibit B to the complaint, that that $171 item is included in the amount financed, upon which amount the finance charge was computed. Thus, plaintiff's basic premise rests upon a misstatement of that patent fact.

That item was properly allocated to the amount financed figure. The face of the contract clearly and conspicuously stated that credit life insurance was not required to obtain credit, and Rounds did give a specifically dated and separately signed request that such insurance was desired by him in the loan transaction.

Under a section of the contract entitled "Insurance," figures were entered reflecting a premium for casualty insurance insuring the mobile home and the figure of $171 for "Group Credit Life Insurance Charge." That section concludes with the following statement:

"NOTICE TO BUYER: (1) You are not required to obtain the Credit Life and/or Credit Accident and Health Insurance for which a charge is indicated above and such is not a factor in the Seller's approval of this credit. (2) You have the right to choose the person through whom the Automobile Physical Damage Insurance required under this contract is to be obtained. Buyer authorizes seller to obtain insurance coverage for which an amount is included above."

That statement is immediately followed by entry of the date and the signature of Rounds as buyer.

The court is at a loss to determine upon what theory these allegations were stated. The premium was properly included as a part of the amount financed. Regulation Z requires that credit insurance charges are to be included as a part of the finance charge only if such insurance is required as a condition for extending credit. Such charges are not included in the finance charge if the instrument clearly and conspicuously discloses to the debtor that such insurance coverage is not required and if the debtor gives "specific dated and separately signed affirmative written" request for such insurance coverage after he has received written disclosure of the cost of such insurance.[3] It is clear, upon the face of this instrument, that there was compliance with the Regulation. Judgment will therefore be entered dismissing paragraphs 11e and 11f of the complaint.

Paragraph 11c of the complaint alleges that the contract included an assignment to the holder of all refunds of insurance premiums. Paragraph 11d alleges that the defendants, or one of them, obtained a security interest in credit life insurance upon the life of Rounds. Plaintiff contends that the assignment of unearned premiums and the right to receive the proceeds of credit life insurance and the proceeds of casualty

---

**3.** The charge for credit insurance is a part of the finance charge unless:

"(i) the insurance coverage is not required and this fact is clearly and conspicuously disclosed in writing to the customer; and

"(ii) any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after reviewing written disclosure to him of the cost of such insurance. Reg. Z, § 226.-4(a)(5)(i)(ii).

insurance upon the mobile home created security interests which were not properly disclosed to Rounds.

The plaintiff's contention that the assignment of unearned insurance premiums, which were advanced by the lender as a part of the principal loan, and the lender's right to receive the proceeds of such insurance to apply upon its loan, are security interests which were required to be disclosed pursuant to Section 1638(a)(10) is a novel contention which apparently presents an issue of first impression.

The decision most closely in point to the issue before this court is *Mims v. Dixie Finance Corp.*, 426 F.Supp. 627 (N.D.Ga. 1976). In pertinent context, the plaintiff in *Mims* claimed that the creditor had failed to disclose its security interest in the plaintiff's waiver and assignment of her rights to homestead and rights to exemption of property from levy and sale under the provisions of the statutes of the State of Georgia. Three pertinent premises characterize the special master's report which the court adopted. *Ibid.* at 628. The first is that the character of a right which is claimed to create a security interest must be adjudged and determined by the application of state law. *Id.* at 632, et seq. The second is that TILA disclosures as to security interests must be so limited as to avoid the obscuration of required disclosures by the inclusion of the unnecessary and irrelevant description of other contract clauses and rights which do not create a security interest in the legal sense. *Id.* at 638. The third is that the term "security interest," as employed in TILA and the Regulation, must be limited by its definition to those contractual or statutory rights which create a lien upon the debtor's property. *Id.* at 632–637.

In the TILA context, the court exhaustively reviewed the state court decisions related both to the waiver and the assignment of the statutory exemptions. The consensus of that body of law is that the exemption does not create a lien upon property, but only the inchoate right in the creditor to reach property to satisfy his claim which would be, without the waiver

or assignment, exempt from execution and sale. *Ibid.* It held that the waiver and assignment of the statutory exemptions in the nature of homestead did not create a security interest which was required to be disclosed. *Id.* at 637–638.

Other reported decisions have no relevant bearing upon the issue, with the single exception that such decisions must be construed to treat "security interests" within the intendment of the statute as analogous to liens or other charges against the debtor's property. Thus, in *Douglas v. Beneficial Finance Co. of Anchorage*, 469 F.2d 453, 456 (9th Cir. 1972), the court held that a confession of judgment clause in a promissory note did not create a security interest, because, under Alaska law and procedure, no judgment could enter and no lien attach to the debtor's property without prior notice to the debtor. In the context of the right of recision created by Section 1635 of the Act, the courts have construed "security interests" to include those rights which created present or prospective liens upon the property of the debtor. *E. g., Charnita, Inc. v. F.T.C.*, 479 F.2d 684 (3d Cir. 1973); *N. C. Freed Co., Inc. v. Board of Governors of Fed. Res. Sys.*, 473 F.2d 1210, 1217 (2d Cir. 1973); *Gardner & North R. & S. Corp. v. Board of Gov's Fed. Res. Sys.*, 150 U.S. App.D.C. 329, 331–333, 464 F.2d 838, 840–842 (1972).

Neither the Act nor the Regulation is specific in definition of security interests which must be disclosed. In *DeJaynes v. General Finance Corporation of Illinois*, 442 F.Supp. 377 (S.D.Ill.1977), this court recognized that the Act and Regulation must be liberally construed and applied, but it disavowed the judicial power, under the guise of construction, to impose disclosure requirements which transcend those mandated by the statute. *Ibid.* at 381.

■ The security interests which must be disclosed under Section 1638(a)(10) include all provisions which have the effect of imposing a lien upon, or a charge against, the property of a debtor. The real issue before this court is whether the definition of "security interests" should be expanded by this

court to include the rights to apply unearned premiums, which the lender advanced as a part of the loan, and to apply the proceeds obtained from any insured loss to payment of the loan.

■ As the court aptly suggested in *Mims, supra,* not every interest or benefit running to a creditor is a security interest within the intendment in the Act and the Regulation. 426 F.Supp. at 438. Both the assignment of unearned premiums and the assignment of insurance proceeds do provide some benefit and protection to the lender. But neither of those provisions subject the debtor's property to any lien or any risk. Rather, the insurance provisions of the agreement are properly construed as being mutually protective of the interests of both the debtor and the creditor. If one must seek a plus side of that mutual equation, the provisions are most protective of the interests of the debtor, inasmuch as he assumed the risk of loss under the contract and his obligation would be ameliorated by the application of either unearned premiums or the proceeds of a claim of loss to the payment or reduction of his obligation.

■ It must be concluded that the contract provisions in question did not create security interests within the intendment of the Act and Regulation. The provisions impose no claim against, nor risk to, the plaintiff's assets. If such ephemeral interests are to be deemed to be security interests within the disclosure requirements of the Act, that determination should emanate from Congressional enactment or from a determination of the Board, not from a judicial decree.[4]

Judgment will therefore be entered dismissing paragraphs 11c and 11d of the complaint.

A further contention of the Bank's motion is that James Rounds should be dismissed as a party plaintiff inasmuch as the wage earner trustee is the real party in interest, in view of the provision of the Bankruptcy Act that the Chapter XIII court has exclusive jurisdiction of all property of the debtor pending consummation of the plan and the proceedings. 11 U.S.C. § 1021.

No case is found which has considered this issue in the context of a TILA claim.[5] Resort must therefore be had to the provisions of the Bankruptcy Act and to decisions which bear some analogy to the issue presented here.

The Bank refers the court to *In re Williams,* 422 F.Supp. 342 (N.D.Ga.1976). That case arose in the following context. The debtor filed her petition under Chapter XIII of the Bankruptcy Act. 11 U.S.C. § 1001, et seq. At that time she had a balance of about $245 in a checking account with C & S Bank. She also possessed a C & S credit card upon which a balance in excess of her checking account was then due and payable. Upon its receipt of notice of the Chapter XIII proceeding, C & S credited her checking account balance to the reduction of sums due and payable upon her credit card account. When C & S refused to restore the funds to debtor's checking account, it was adjudged in contempt of court by the bankruptcy judge. The reported opinion emanated from an appeal of that contempt order.

C & S argued that it had the right under Section 68(a) of the Bankruptcy Act, 11 U.S.C. § 108(a), to set off the deposit against its account pursuant to its agreement with the debtor. *Ibid.* at 343–344. The court confirmed that right, but based its decision upon the further issue whether C & S had violated a valid restraining order by its refusal to restore the checking account balance. Though the right of setoff could not be abrogated, the court held that the bankruptcy judge in a Chapter

---

4. Compare, security interests as defined in Article 9 of the U.C.C., Ill.Rev.Stat.1977, ch. 26, §§ 9–101, et seq.

5. The representation was made by the plaintiff's attorney at the hearing that he would supply the court with a citation deemed by him to control or influence this issue. That citation has not been supplied and no brief was filed. Thus, plaintiff's precise position remains obscure.

XIII proceeding was vested with a sound discretion to postpone, and direct the exercise of, that statutory right.[6]  *Id.* at 344–345.

In that context the court recognized a necessary distinction between a trustee in straight bankruptcy and a wage earner trustee.  In the first instance, the bankruptcy court's jurisdiction attaches only to property within its actual or constructive possession.  In the second, the jurisdiction under Chapter XIII attaches to all property owned by the debtor.  *Id.* at 345.  The court said that the debtor's right to the bank account was a chose in action which was property within the intendment of 11 U.S.C. § 1006(4), and thus subject to control by the bankruptcy judge.  *Id.*

In *In re Rutledge*, 277 F.Supp. 933, 935 (E.D.Ark.1967), the court said that a Chapter XIII court has exclusive jurisdiction over all of the debtor's property during the entire period intervening to the consummation of the plan, including the discretionary jurisdiction to stay enforcement of a lien upon the debtor's property.[7]  *In re Pizzolato*, 268 F.Supp. 353, 357 (W.D.Ark.1967), sustained the jurisdiction of the bankruptcy court under Chapter XIII to enjoin a nonconsenting secured creditor from foreclosing a lien upon pledged property during a pendency of the plan.  Like views of the scope of Chapter XIII jurisdiction over property of the debtor are expressed in *In re Clevenger*, 282 F.2d 756 (7th Cir. 1960), *First Nat. Bank v. Cope*, 385 F.2d 404 (1st Cir. 1967), and *Hallenbeck v. Penn Mutual Life Ins. Co.*, 323 F.2d 566 (4th Cir. 1963).

The Act provides that the bankruptcy court has exclusive jurisdiction of the debtor, his property, and his wages and earnings during the period of the consummation of a Chapter XIII plan.  11 U.S.C. § 1021.  It retains such jurisdiction of the debtor for all purposes of the plan and it may enter such orders as may be necessary to effectuate the plan.  11 U.S.C. § 1058(1), (2).  The word "property" is employed generically in that context, including property which remains during pendency of the proceeding in the possession of the debtor.

The objects of the Act are to protect the debtor from harassment by creditors, to pay the creditors pursuant to a court-supervised plan, and to apply available assets of the debtor, consistently with the requirements of his financial rehabilitation, to the payment of such claims.

As *Williams* correctly observed, a chose in action is property within the intendment of Chapter XIII, 11 U.S.C. § 1006(4), which is subject to control by the bankruptcy court.  The one remaining question is whether a distinction need be made in the context of the thrust of Chapter XIII between an action in debt, as in *Williams*, and a TILA action for a statutory penalty.  We think no valid distinction can be drawn.  The court is constrained to hold that the cause of action is property of the debtor which passes to the control of the bankruptcy court under the Chapter XIII plan.[8]

The motion will be allowed dismissing James Rounds as a plaintiff.

In all other respects, the Bank's motion to dismiss the complaint as to it is denied.  In brief summary, the Bank contends that the complaint does not state a claim upon which relief can be granted, that it (the Bank) is a subsequent assignee, and that allegations related to the Bank and the dealer are so commingled that the complaint cannot be sorted out.  Though the court is sympathet-

---

6.  It did reverse the provision of the order which required C & S to restore the deposit to a special trust fund upon which the debtor could freely draw.  Its direction placed the fund thus created under the supervision of the bankruptcy court and enjoined the debtor and trustee from withdrawing the same without an order of that court.

7.  11 U.S.C. § 1014.

8.  We are not concerned with the issue whether a TILA claim is property within the actual or constructive possession of the court in straight bankruptcy pursuant to Section 70(a) of the Act.  11 U.S.C. § 110(a).  *See Murphy v. Household Finance Corp.*, 560 F.2d 206 (6th Cir. 1977).  Nothing contained in this memorandum should be construed as the statement of any opinion on that question.

ic with that last contention, it does not appear that the complaint is so confused that it would preclude either party defendant from answering or, by other appropriate pleading, responding thereto. Substantially all of those remaining contentions rest upon the assertion of facts and matters which would be appropriately presented by an answer to the complaint or as defense to the complaint.

### The Bank's Counterclaim

■ This court has consistently held that a counterclaim upon the underlying credit obligation is not a compulsory counterclaim in a TILA action. It is recognized that there are several decisions opposed to that view.[9] However, in the absence of a controlling authority rejecting this court's position, this counterclaim will be dismissed. 15 U.S.C. § 1640(h).

### The Petition to Reclaim Security

Clearly, the Bank's petition to reclaim its security is directed to the wrong court. The thrust of that petition is the position that the Bank is entitled to the prayed relief because Rounds has not complied with the provisions of an order by the bankruptcy court which confirmed the Chapter XIII plan.

■ Under Chapter XIII, the bankruptcy court has exclusive jurisdiction of one debtor's property pending consummation of the proceeding. *E. g., In re Rutledge, supra.* That proceeding is designed to apply available assets of the debtor, plus prospective wages and earnings, to the financial rehabilitation of the debtor in the course of those proceedings. During such time, the bankruptcy court stands as a bulwark to keep the creditors at bay while the plan runs its course. As *Rutledge* and other decisions point out, the issues upon a petition for reclamation of security would transcend the question whether Rounds has complied with the arrangement and the plan which the bankruptcy court has ap-

proved. It also presents the issue whether permitting reclamation of the security would so inhibit the plan for rehabilitation that the bankruptcy court should, in its sound discretion, reject the claim for reclamation. Those issues could reach this court only by an appeal from such action as the bankruptcy court might take.

The petition for reclamation will therefore be dismissed, without prejudice to the Bank's right to file a reclamation petition, or other appropriate proceeding, in the Chapter XIII proceeding.

### The Dealers Motion to Strike Cross-Complaint

The dealer's motion erroneously assumes that the principles applicable to a counterclaim, in the light of Section 1640(h), apply as well to a cross-complaint for exoneration from the effect of an adverse judgment in a TILA suit.

The counterclaim is deemed to be not compulsory because it does not emanate from the same transaction upon which the TILA complaint is grounded. Such a complaint must rest upon the contention that there was a violation of the Act in the disclosures which were made prior to consummation of a credit transaction. It has no bearing upon the validity or enforceability of the underlying credit instrument to which those prior disclosures relate. A counterclaim is a suit for enforcement of that credit instrument. Thus the counterclaim does not arise out of the same transaction, and this court has uniformly held that it is noncompulsory and not maintainable in a TILA suit.

■ This cross-complaint, on the other hand, does arise from the same transaction which gave rise to the TILA complaint. The thrust of the cross-complaint is embodied in allegations, *inter alia*, that the Bank is a subsequent assignee of the credit instrument, that it was not required to make disclosures, that it is not primarily liable for

9. *E. g., Mims v. Dixie Finance Corp., supra* at 630; *Rollins v. Sears, Roebuck & Co.,* 71 F.R.D. 540, 543 (E.D.La.1976).

any failure on the dealer's part to make all required disclosures, and that it should have judgment over against the dealer in the event that a judgment adverse to it is entered. Thus, the cross-complaint does arise out of the same transaction which gave rise to the TILA complaint. The provisions of Section 1640(h) provide no bar against that proceeding.

IT IS ORDERED, therefore, that:

a. Summary judgment is entered dismissing subparagraphs 11c, d, e, and f of the complaint.

b. The complaint is dismissed as to the plaintiff, James E. Rounds.

c. The Bank's motion to strike the complaint is in all other respects denied.

d. Plaintiff's motion to strike the Bank's counterclaim is allowed.

e. The Bank's petition for reclamation is dismissed by the court for want of jurisdiction.

f. The dealer's motion to strike the Bank's cross-complaint is denied.

g. The defendants shall file their respective answers to the complaint and cross-complaint within twenty (20) days.