Lisa HERNANDEZ, Plaintiff,

v.

O'NEAL MOTORS, INC., General Motors Acceptance Corporation, Defendants.

Jackson BROWN and Delores Brown, Plaintiffs,

v.

FRONTIER FORD, INC., a New Mexico corporation; Ford Motor Credit Company, Inc., a Delaware corporation, Defendants.

Theresa M. SHIELDS, Plaintiff,

v.

FORD MOTOR CREDIT COMPANY; Capitol Motor Company, Defendants.

Nona JACKSON, Plaintiff,

v.

FRONTIER FORD, INC., a New Mexico corporation doing business in the State of New Mexico; Ford Motor Credit Company Inc., a corporation doing business in the State of New Mexico, Defendants.

Grover BELLSON, Plaintiff,

v.

GURLEY MOTOR COMPANY; First State Bank at Gallup, Defendants.

Sandra R. QUANDELACY, Plaintiff,

v.

FRONTIER FORD, INC.; Ford Motor Credit Corp., Defendants.

Nellie PINO, Plaintiff,

v.

FORD MOTOR CREDIT COMPANY; Mt. Taylor Ford, Inc., Defendants.

David JUANICO and Lucy Juanico,
Plaintiffs,

v.

RICHARDSON FORD SALES, INC.;
Ford Motor Credit Corp.,
Defendants.

Rita CATA, Plaintiff,

v.

CAPITOL MOTOR COMPANY; Ford
Motor Credit Company, Defendants.

Marie JOHNSON, Plaintiff,

v.

FORD MOTOR CREDIT COMPANY;
Mt. Taylor Ford Inc., Defendants.

Nos. 79–226 Civil, 78–776 Civil, 78–796 Civil, 79–187 Civil, 79–362 Civil, 79–458 Civil, 79–460 Civil, 79–461 Civil, 79–581 Civil and 79–621 Civil.

United States District Court,
D. New Mexico.

Oct. 16, 1979.

Michael M. Carrasco, Mark S. Jaffe, Southern N.M. Legal Services, Carlsbad, N.M., Timothy Meehan, Taos, N.M., Richard J. Rubin, Santa Fe, N.M., Joseph F. Gmuca, DNA–Peoples Legal Services, Crownpoint, N.M., Michael H. Shaut, Window Rock, Ariz., Paula I. Forney, Indian Pueblo Legal Services, Inc., Zuni, N.M., Helen L. Lopez, Albuquerque, N.M., for plaintiffs.

Roger E. Yarbro, McCormick & Forbes, Carlsbad, N.M., for defendant O'Neal.

Nathan Mann, Jerrald J. Roehl, Albuquerque, N.M., for defendant General Motors.

Jay Hertz, Albuquerque, N.M., Verne Hale, Grants, N.M., Kellahin & Kellahin, Karen Aubrey, Santa Fe, N.M., William H. Hyde, Jr., Bruce E. Pasternack, Albuquerque, N.M., John H. Schuelke, Gallup, N.M., for defendants.

## MEMORANDUM OPINION

PAYNE, District Judge.

Cases 79–226, 78–776, 78–796, 79–187, 79–362, 79–458, 79–460, 79–461, 79–581 and 79–

621 were consolidated because each involves whether the assignment of returned or unearned premiums of physical damage insurance must be disclosed as a security interest under the Truth-In-Lending Act (TILA), 15 U.S.C. § 1638(a)(10), and Regulation Z, 12 CFR § 226.8(b)(5). For the reasons stated below, the question must be answered in the affirmative.

In each case the facts relevant to this issue are similar in all material respects: the plaintiff entered into a motor vehicle installment contract for the purchase of a motor vehicle from the defendant seller; and on the same day, or a short time later, the contract was assigned to the defendant motor company or motor vehicle finance company.

On the face of each contract the following, or similar provision, appears:

(13) Security Interest: Seller shall have a security interest under the Uniform Commercial Code in the Property (described above) and in the proceeds thereof to secure the payment in cash of the Total of Payments and all other amounts due or to become due hereunder.

On the reverse side of the contract, or on a separate page, a provision requires the plaintiff, as a condition of the contract, to purchase physical damage insurance protecting the buyer's and seller's interest in the motor vehicle. The provision also contains the following or similar language:

Buyer hereby assigns to Seller any monies payable under such insurance, by whomever obtained, including returned or unearned premiums, and Seller hereby is authorized on behalf of both Buyer and Seller to receive or collect same, to endorse checks or drafts in payment thereof, to cancel such insurance or to release or settle any claim with respect thereto. The proceeds from such insurance, by whomever obtained, shall be applied toward replacement of the Property or payment of the indebtedness hereunder in the sole discretion of Seller.

The TILA, Regulation Z, 12 C.F.R. §§ 226.8 and 226.6, requires a seller to disclose on the face of the sales contract, or on one side of a separate statement which identifies the transaction, *inter alia*, " . . . [a] description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates . . ." The TILA goes on to define a security interest subject to this disclosure requirement as:

"any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens whether or not recorded, mechanic's, materialmen's, artisan's, and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation."

The specific question presented, therefore, is whether the assignment of returned or unearned insurance premiums of the required physical damage insurance policy creates a security interest, as defined above, which should have been disclosed on the front side of the motor vehicle sales contract.

This question was answered in *Edmondson v. Allen-Russell Ford Inc.*, 577 F.2d 291 (5th Cir. 1978), cert. denied 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1057 (1979) in which, under facts similar in all material respects to those in the cases at bar, the Court held that the assignment of returned or unearned premiums of physical damage insurance gives the creditor an interest in property which helps to secure the payment or performance of contractual obligations; and that such an interest is a security interest within the meaning of the TILA and is subject to disclosure under the provisions of §§ 226.8 and 226.6 of Regulation Z. *See also, Shanks v. Greenbriar Dodge Inc.*, 577 F.2d 296 (5th Cir. 1978).

*Edmondson, supra,* is not the only Court to have considered this question, however. In *Rounds v. Community National Bank in Monmouth,* 454 F.Supp. 883 (S.D.Ill.1978), and again in *James v. Ford Motor Credit Co.,* 78–F647 (D.Co.1978), appeal pending No. 78–1806 (10th Cir. 1978), the Southern District of Illinois and the District of Colorado held that the assignment of returned or unearned insurance premiums and proceeds does not create a lien or security interest as defined under state law, and that such a conclusion governs whether a security interest was created under the TILA.

Thus, *Edmondson* conflicts with *Rounds* and *James.* Nevertheless for the reasons stated below, *Edmondson* controls the question at bar.

Although none of the decisions are binding outside their respective jurisdictions, the *Rounds* and *James* decisions are less persuasive than *Edmondson* for several reasons. First, neither *Rounds* nor *James* cites a position adopted by any of the Circuit Courts, while *Edmondson,* on the other hand, was the en banc decision of the Fifth Circuit. Secondly, the *James* decision considered only the assignment of insurance proceeds, rather than the assignment of unearned or returned premiums; and thirdly, the *Rounds* decision ignores the statutory definition of a security interest contained in Regulation Z, § 226.2(gg) and, instead, relies upon a definition supposedly adopted in *Mims v. Dixie Finance Corporation,* 426 F.Supp. 627 (N.D.Ga.1976). *Mims,* however, did not define a "security interest" as restrictively as *Rounds.* *Mims* merely held that state lien law must be examined to determine the extent of a suspected "security interest," and nothing in *Mims* indicates that state law definitions of the words "lien" or "security interest" are also the definitional limits of a "security interest" under Regulation Z, § 226.2(gg). Moreover *Mims,* if it ever did intend to hold that state law definitions control the TILA, was overruled *sub silentio* by the en banc decision of the Fifth Circuit in *Edmondson.*

Turning now to the merits of the matter, aside from the above precedents, the determination of whether the assignment of unearned or returned insurance premiums creates a security interest subject to disclosure under the TILA, necessarily begins with an examination of the term "security interest" as it is defined under the TILA.

Regulation Z, § 226.2(gg) defines a security interest broadly as, ". . . any interest in property which secures payment or performance of an obligation." It also says that such an interest includes, but is not limited to, security interests under the Uniform Commercial Code, etc.

■ This definition suggests an interplay between state and federal law which can be explained as follows: State law determines the substance of the interest created, but federal law defines whether the substantive interest is a security interest. This is because the substantive rights and interests of the parties to most consumer credit transactions are governed by state law. Accordingly, whether a party has retained an interest in property which secures the payment of an obligation, must be determined by examining the law of the relevant state. But once state law determines that a party has retained an interest in another's property which secures the performance of an obligation, then such an interest is a security interest within the meaning of the TILA because it is defined as such under the statute, and the semantics used by state law to define the interest—i. e., security interest, mortgage, lien, contract right, etc.—are irrelevant.

■ For example, if state law renders the assignment of unearned or returned insurance premiums unenforceable or void, or does not give the seller any rights superior to the buyer or any other creditor, then such an assignment creates no interest in property securing the payment of an obligation, and no security interests exists under the TILA. *See, Meyers v. Clearview Dodge Sales, Inc.,* 539 F.2d 511, 519 (5th Cir. 1976), *cert. denied* 431 U.S. 929, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1976). If on the other hand, such an assignment does give the seller an

interest in property which secures the performance of an obligation, then the interest is a security interest subject to disclosure under the TILA.

This conclusion does not conflict with FRB Letter No. 1263 (November 23, 1977). It states:

Your first several questions relate to the treatment of insurance for disclosure purposes in various situations, which can be summarized as follows. An extension of credit is secured either by a mortgage on real property, or by a security interest in personal property. In either case, the mortgage or security agreement obligates the customer to carry either insurance for loss of or damage to the property, credit life insurance, or credit health and accident insurance (or more than one of these types of insurance). The mortgage or security agreement further provides that insurance proceeds shall be payable to the creditor, and gives the creditor an interest in all returned and unearned premiums. You ask what sort of identification of the type of security interest would comply with § 226.9(b)(5) [226.8(b)(5)] in the situations described above.

*What constitutes adequate identification of the type of security interest acquired by the creditor depends upon how relevant State law would describe the security interest.* Note that a *more fundamental matter* in these circumstances *may be to determine whether a security interest exists at all* and, if so, to identify the property subject to such interest. Section 226.2(gg) defines 'security interest' as 'any interest in property which secures payment or performance of an obligation.' Thus, if the creditor does not acquire any interest in property (including real property and tangible or intangible personal property), or if any such interest does not secure payment of the debt, no security interest exists. *For example, the contractual right to proceed under an insurance policy may not amount to an interest in property. On the other hand, assignment of returned and unearned premiums may transfer to the creditors such an interest. However, staff believes*

*these questions would be better addressed as a matter of State law.*

.   .   .   .   .

In summary, staff is of the opinion that an interpretation of Regulation Z will not resolve these questions but, rather, that your questions are more properly viewed as involving interpretations of State law. (emphasis added)

Thus FRB Letter 1263 says nothing more than what has already been said—state law determines whether an interest in property has been created which secures payment of the obligation. Nothing in FRB Letter 1263, however, indicates that the broad definition of a security interest contained in Regulation Z, § 226.2(gg) is limited by the semantics used by state law to define interests in property.

■ Turning to the question at bar, the right to receive unearned or returned insurance premiums is an interest in property; and under New Mexico law, the assignment of that interest is a valid transfer of an interest in property. Furthermore, the assignment to a seller of the right to receive unearned or returned premiums under a motor vehicle purchase contract, secures to the seller the payment of the obligation. Accordingly, the assignment creates a security interest that must be disclosed under the TILA.

■ Having concluded that a security interest was created, the question then becomes whether this interest is adequately disclosed by a clause in the disclosure statement saying, "seller shall have an interest under the Uniform Commercial Code in the property (described above) and in the proceeds thereof   .   .   .." This question was disposed of in *Edmondson, supra,* at 295–296 in which the Court held that such a disclosure was not adequate for the requirements of Regulation Z.

The reasoning in *Edmondson* is equally applicable here. No layperson would understand that the word "proceeds" included anything but the item sold—a motor vehicle—or substitutes for the item upon its

sale, exchange or other disposition. It would frustrate the spirit and the letter of the TILA to allow a creditor to evade its disclosure requirements by burying an interest in insurance premiums in the boilerplate of a separate document, without so much as a hint to its existence.

This conclusion is not affected by *P.P.G. Industries Inc., v. Hartford Insurance Co.,* 531 F.2d 58 (2d Cir. 1976). *See also, Paskow v. Calvert Fire Insurance Co.,* 579 F.2d 949 (5th Cir. 1978); *Aetna Insurance Co. v. Texas Thermal Industries,* 436 F.Supp. 371, 376 (E.D.Texas 1977); §§ 55–9–104(g) and 55–9–306 N.M.S.A.1978. In *P.P.G., supra,* the Court held that insurance proceeds constitute "proceeds" within the meaning of the Uniform Commercial Code. But this case involves insurance premiums, not proceeds. Moreover even assuming, *arguendo* that the term "proceeds" covers a seller's interest in returned or unearned insurance premiums, the issue here is the adequacy of the disclosure of the interest, and not the validity of the interest retained. For although using the term "proceeds" may, under the Uniform Commercial Code, grant a seller a valid interest in the buyer's returned or unearned insurance premiums, it does not, on the other hand, adequately disclose to the consumer buyer that such an interest has been retained or the property it covers.

■ A further argument is made that the interest in returned or unearned premiums was properly disclosed on the back side of the disclosure statement because it was too lengthy to be included in the disclosure statement. The TILA, Regulation Z, § 226.8(b)(5), however, permits separate disclosures on a separate document only, ". . . where a clear identification of [the] property cannot properly be made on the disclosure statement due to the length of such identification . . .," and only where the disclosure statement contains a reference to the other document containing the interest. Neither condition is met in this case. First, the disclosure statement makes no reference to the interest retained on the back side. See Regulation Z, § 226.-

801. Secondly, the interest in insurance premiums is not lengthy. It could have easily been placed in the paragraph disclosing the security interest in the property and proceeds—seller shall have a security interest . . . in the property (described above) and in the proceeds thereof, and in the proceeds and unearned or returned premiums of the physical damage insurance.

## AFFIRMATIVE DEFENSES

The defendants have individually or collectively asserted several affirmative defenses. These will be treated below.

### I

■ 15 U.S.C. § 1640(c) provides a creditor with a defense where a violation is not intentional and results from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error. Most recent decisions, however, have held that the unintentional violation defense of § 1640(c) is only available for clerical errors which occurred despite a system for correcting them. *Ives v. W.T. Grant Co.,* 522 F.2d 749 (2nd Cir. 1975); *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161 (7th Cir. 1974); *Palmer v. Wilson,* 502 F.2d 860 (9th Cir. 1974). Since none of the defendants have alleged that the failure to disclose the interest retained in insurance premiums was due to a clerical error, plaintiffs are entitled to judgment as a matter of law.

■ Some courts have construed § 1640(c) more broadly, *Thrift Funds of Baton Rouge Inc. v. Jones,* 274 So.2d 150 (La.); *Welmaker v. W.T. Grant Co.,* 365 F.Supp. 531 (N.D.Ga.), and the Tenth Circuit has yet to adopt either interpretation. *Hinkle v. Rock Springs National Bank,* 538 F.2d 295 (10th Cir. 1976). Nevertheless, the limitation of § 1640(c) to clerical or mathematical errors is the better rule. Without such a limitation the TILA would be totally frustrated because any creditor with enough sense to read the Act could avoid its sanctions by merely applying his own good faith interpretations to it. Such was neither the spirit nor the intent of the provision in question.

## II

15 U.S.C. § 1640(f) provides that a creditor is not liable under the TILA where the disclosures are made in good faith and in conformity with the rules, regulations and interpretations of the TILA as promulgated by the Federal Reserve Board. Specifically, it extends the good faith reliance defense to include reliance on "any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe." *See,* 12 Ga.L.Rev. 814, 880 (1978).

Here, none of the defendants have pointed to any interpretation or approval of the Federal Reserve Board upon which they could have, in good faith, relied in failing to disclose the unearned premiums as a security interest. Argument has been made that FRB Letter No. 1263 ((November 23, 1977) would support such a defense. However, as has already been indicated, FRB Letter No. 1263 did not state that the assignment of unearned premiums would, or would not, create a security interest under the TILA; rather, it merely advised that state law had to be consulted to see if an interest in property had been created which secured the payment of an obligation. Since this Court has already held that, under State law, such an interest was created, plaintiffs are entitled to judgment as a matter of law on this issue.

## III

Several of the defendants argue that they are mere assignees and are not liable as creditors under the TILA. 15 U.S.C. § 1614, however, provides that an action may be brought against any subsequent assignee where the violation from which the liability arose is apparent on the face of the instrument assigned.

■ Here, the violation is apparent on the face of the assigned documents, and the liability therefor can be determined as a matter of law. Accordingly, the assignees of the documents are liable as creditors under the TILA.

## IV

The final defense raised by several defendants is that the transactions were not bona fide consumer credit transactions subject to the requirements of the TILA.

Under certain circumstances, this has been held to be a valid defense. *See, Kenney v. Landis Financial Group, Inc.,* 376 F.Supp. 852 (D.C.Ia.1974). Here, the facts and circumstances of each case are unclear, and the Court will have to hear the matter, along with the issue of damages, at trial.