GOLDBERG, Circuit Judge:
This case, like Shanks v. Greenbriar Dodge, Inc., 577 F.2d 296, (5th Cir. 1978), also decided today, requires us to determine whether an assignment of returned or unearned premiums of physical damage insurance must be disclosed as a security interest under the Truth-In-Lending Act (“the Act”), 15 U.S.C.A. § 1638(a)(10) (1974),[1] and Regulation Z, 12 C.F.R. § 226.8(b)(5).[2] We hold that such assignments do constitute security interests for purposes of Regulation Z and must be disclosed. We further hold that the disclosure here was inadequate to meet the requirements of Regulation Z and the Act.
The facts in this case are straightforward. On April 24, 1975, plaintiff-appellee Catherine T. Edmondson entered into an “Automobile Retail Instalment Contract” with defendant Allen-Russell Ford, Inc. (“Allen-Russell”) for the purchase of a used 1970 MG Midget automobile. The contract was subsequently assigned by Allen-Russell to defendant-appellant Ford Motor Credit Co. (“Ford”). The contract included on its face a disclosure statement as required by the Truth-In-Lending Act. Plaintiff brought suit on May 19, 1975 alleging that defendants[3] had failed to comply with the disclosure requirements of the Act and Regulation Z in several respects. Following cross-motions for summary judgment, the case was referred to Bankruptcy Judge Ezra Cohen, sitting as special master. The special master made recommendations on four issues. The district court, “find[-ing] itself in agreement with the special master’s conclusion that the defendant failed to disclose the fact that it asserted a security interest in returned or unearned premiums of the automobile insurance” in violation of 12 C.F.R. § 226.8(b)(5), adopted the special master’s recommendation on that issue and *293 awarded the plaintiff judgment in the amount of $1000 and $900 in reasonable attorney’s fees against defendant Ford. It is from this order of final judgment, founded solely on the returned or unearned insurance premium issue, that Ford now appeals.
Two provisions from the combined disclosure statement and installment contract are important in the resolution of this case. Paragraph 13 on the face of the disclosure statement provides as follows:
(13) Security Interest: Seller shall have a security interest under the Uniform Commercial Code in the Property (described above) [4] and in the proceeds thereof to secure the payment in cash of the Total of Payments and all other amounts due or to become due hereunder.
The reverse side of the document, headed “Additional Terms and Conditions,” provides in paragraph 18[5] that
Buyer hereby assigns to seller any monies payable under such insurance, by whomever obtained, including returned or unearned premiums . . . . The proceeds from such insurance, by whomever obtained, shall be applied toward replacement of the Property or payment of the indebtedness hereunder in the sole discretion of Seller.
Appellant contends, primarily, that the assignment created by paragraph 18 does not constitute a security interest and therefore need not be disclosed and, secondarily, that if the assignment is held to constitute a security interest, it is adequately disclosed in paragraph 13 on the face of the contract. We reject both contentions.
I. Creation of a Security Interest
Appellant’s first argument seems to be that bec ause the returned or unearned insurance premiums are “assigned,” they cannot be the subject of a security interest. Appellant further devotes considerable effort to an analysis of the Uniform Commercial Code as enacted in Georgia to establish that assignments of proceeds of insurance are excluded from treatment as “security interests” under Georgia law.
Fortunately we need not tarry long over the complexities of Georgia’s commercial law, for appellant’s argument has been anticipated by a recent decision of this court. In Elzea v. National Bank of Georgia, 570 F.2d 1248 (5th Cir. 1978), we considered whether an assignment of homestead and exemption rights constituted a security interest for purposes of Regulation Z. Our discussion in Elzea is precisely apposite here:
*294 The Truth-in-Lending Act requires a creditor to disclose a “description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit.” 15 U.S.C. § 1639(a)(8). Regulation Z, promulgated by the Federal Reserve Board pursuant to authority granted in the Act, defines “security interest” and “security” to “mean any interest in property which secures payment or performance of an obligation.” 12 C.F.R. § 226.2(gg). The definition also lists some interests in property that are security interests. The assignment in this case, although not specifically listed, is a security interest because it is an interest in property which secures payment of an obligation.
570 F.2d at 1249. Regulation Z itself provides that the terms “security interest” and “security” “include, but are not limited to, security interests under the Uniform Commercial Code . . . .” 12 C.F.R. 226.-2(gg).[6] We stressed in Elzea that technical characterizations “are not determinative of whether a creditor holds a security interest under Regulation Z’s definition.” Id. at 1249-50. Rather, “[t]his question should be answered by examining the rights which the creditor has.” Id. at 1250. We noted as significant factors whether the creditor has an interest in property and whether “the assignment helps to secure payment of the obligation.” Id. Even property which “cannot presently be identified and may not yet exist” may be the subject of a security interest for Regulation Z purposes. “What is important is that the . . . privilege is valuable to the debtor and he has given up this valuable privilege to the extent of his debt.” Id.
The application of these principles to the facts of this case presents no difficulty; indeed, we believe this case follows a fortiori from Elzea. Viewing the economic reality of the transaction, we have no doubt that the right to unearned property insurance premiums can be a valuable economic right. Appellant’s brief itself points out that “fpjractically every secured loan is affected by insurance” and that an “assignment of returned or unearned premiums of insurance appears in virtually all consumer paper secured by property when insurance is required.” Appellant’s Brief at 17. We think it clear beyond peradventure that the assignment of returned or unearned premiums of physical damage insurance confers on the creditor an interest in property which helps to secure payment or performance of contractual obligations. The creditor is expressly granted “sole discretion” to apply, returned premiums toward payment of the indebtedness; this discretion may, of course, be exercised in the event of default. The creditor may also apply the returned premiums toward substitute insurance on the property, thereby securing the debtor’s contractual obligation to obtain and maintain insurance on the vehicle. See note 5, supra. The assignment thus meets the established definition of a security interest and must be disclosed. As the special master stated, “If the security interest was important enough for defendant to acquire, it was important enough to disclose.”
In a decision closely on point, Gennuso v. Commercial Bank & Trust Co., 566 F.2d 437 (3rd Cir. 1977), rev’g 425 F.Supp. 461 (W.D.Pa.1976), the Third Circuit recently held that a clause[7] containing an assign *295 ment of “any return of unearned premiums” ‘create[s] a security interest in the proceeds and unearned premiums of the insurance policy covering the automobile.” 566 F.2d at 440 n.2. We have recently noted the desirability of uniformity in the interpretation of truth-in-lending disclosure requirements, see McDaniel v. Fulton National Bank of Georgia, 571 F.2d 948, 951 (5th Cir. 1978) (en banc), and observe that our result is consistent not only with the decision of the Third Circuit but with the result suggested by a Federal Reserve Board staff interpretation of a closely analogous issue. See FRB Public Position Letter No. 377 (July 22,1970).[8] Neither principle nor precedent nor other persuasive authority supports exclusion of interests in returned insurance premiums from the disclosure requirements of Regulation Z.
II. Adequacy of Disclosure
Appellant Ford’s second argument is that if a security interest was created, this security interest “is a part of the proceeds of the insurance proceeds and consequently a part of the proceeds of the 1970 MG automobile which were properly disclosed.” Appellant’s Reply Brief at 7. As appellant would have it, A is included in B, B is included in C, therefore A is included in C. We find this application of the transitivity principle inconsistent with the logical and policy foundations of the Act. Appellant’s A’s, B’s, and C’s cannot prevail over the commands of Regulation Z.
The “proper disclosure,” in the view of appellant, was that given in paragraph 13 on the face of the disclosure statement: “Seller shall have a security interest under the Uniform Commercial Code in the Property (described above) and in the proceeds thereof . . . .”[9] See text at note 4, supra. Regulation Z, § 226.8(b)(5), provides that each lender must describe or identify “the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates . . . .” We have held that under this regulation, a lender must disclose the type of security interest held, retained, or acquired and the property of the borrower which serves or will serve as the collateral. Anthony v. Community Loan & Investment Corp., 559 F.2d 1363, 1366 (5th Cir. 1977). Reference to a “security interest under the Uniform Commercial Code” has been held to be a sufficient description of a type of *296 security interest as required by 12 C.F.R. § 226.8(b)(5). See id. at 1367, Elzea, supra, 570 F.2d at 1251; FRB Official Staff Interpretation Letter of November 22,1976,1976 CCH Cons.Cred. Guide 131,491. The question here is whether the reference to the MG Midget “and the proceeds thereof” is sufficient to constitute a “clear identification” of returned or unearned insurance premiums. The Gennuso court, in finding the disclosure in that case to be inadequate, focused on the stated purpose of the Truth-In-Lending Act, 15 U.S.C.A. § 1601, “to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.” 566 F.2d at 441. In passing the Act, Congress saw fit to require disclosure not only of the direct costs of credit, but of other terms of credit as well, specifically including the existence of security interests. 15 U.S.C.A. § 1638(a)(10); see also §§ 1637(a)(7), 1639(a)(8). We must assess the adequacy of disclosure, at least in part, by the audience for which disclosure was intended. We cannot imagine that to an audience composed of ordinary laypersons engaged in consumer credit transactions, the contractual reference to the property and the proceeds thereof could mean more than the car itself and substitutes for the car received on its sale, exchange, or other disposition.[10] Indeed, the interpretation of the contractual terms sought by appellant would require a sesquipedalian stretch beyond the capacity of even the legal savant. We countenance no such double-talk here. Returned or unearned premiums are in no sense a substitute for the specified collateral, the MG Midget, and cannot be held to constitute its proceeds. As the special master put it, “These premiums might be proceeds of the insurance policy, but they are not proceeds of the car.” We have examined the words of Ford’s disclosure under every model from A to T, but fail under each to find compliance with the requirements of Regulation Z.
III. Statutory Damages
The district court, finding a violation of the Act and of Regulation Z, awarded plaintiff $1000 in damages and $900 in attorney’s fees. Appellant notes that the Act provides for civil liability in the amount of twice the finance charge, but in no event less than $100 nor more than $1000. 15 U.S.C.A. § 1640. As disclosed by the contract, the finance charge in this case was only $282.57, so that the maximum amount of civil liability would be $565.14, plus reasonable attorney’s fees. The plaintiff has already received in settlement from a co-defendant, Allen-Russell Ford, Inc., one-half of the civil liability in the amount of $282.57 and claimed only the balance in the amount of $282.57 in her Motion for Summary Judgment. Plaintiff concedes that she is entitled only to statutory damages of $282.57 plus reasonable attorney’s fees of $900. The judgment is modified accordingly, and, as modified, affirmed.
JUDGMENT MODIFIED AND, AS MODIFIED, AFFIRMED.

. Section 1638(a) provides in pertinent part: In connection with each consumer credit'sale not under an open end credit plan, the creditor shall disclose each of the following items which is applicable:
. . . (10) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

. Section 226.8(b) provides in pertinent part: Disclosures in sale and nonsale credit. In any transaction subject to this section, the following items, as applicable, shall be disclosed:
. . (5) A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify. In any such case where a clear identification of such property cannot properly be made on the disclosure statement due to the length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage, deed of trust, or similar document evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable. If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.

. Defendant Allen-Russell was voluntarily dismissed from this suit and is not a party to this appeal.

. The Property is defined as a used 1970 MG Midget and identified by serial number.

. The full text of paragraph 18 is as follows: RISK OF LOSS — INSURANCE
The Property shall be at Buyer’s risk. Buyer shall obtain and maintain at his own expense for so long as any amount remains unpaid hereunder insurance protecting the interests of Buyer and Seller against loss, damages or destruction of or to the Property in such forms and amounts as Seller may require. The inclusion of a charge for insurance herein shall not relieve Buyer of such obligation but only authorizes Seller to attempt to obtain the requested coverages on Buyer’s behalf through an authorized agent; provided, if Seller is unable to obtain the requested coverages for the term indicated for the amount included herein, Seller may (i) obtain such coverages for such term, if any, as the insurance carrier to whom Seller shall apply therefor will provide for such amount, or (ii) credit such amount to the final maturing instalments hereunder in inverse order of maturity or as otherwise required by law.
If Buyer fails to obtain or maintain such insurance, or fails to furnish satisfactory evidence thereof upon request, Seller may, but shall not be required to, and without prejudice to his rights hereunder if he does not, obtain such insurance protecting either the interests of Buyer and Seller or the interests of Seller only. In such event, Buyer agrees to reimburse Seller for the cost thereof forthwith upon demand together with interest thereon at the highest lawful contract rate.
Buyer hereby assigns to Seller any monies payable under such insurance by whomever obtained, including returned or unearned premiums, and Seller hereby is authorized on behalf of both Buyer and Seller to receive or collect same, to endorse checks or drafts in payment thereof, to cancel such insurance or to release or settle any claim with respect thereto. The proceeds from such insurance, by whomever obtained, shall be applied toward replacement of the Property or payment of the indebtedness hereunder in the sole discretion of Seller. (Emphasis added.)

. Section 226.2(gg) provides as follows:
“Security interest” and “security” mean any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the 'Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens whether or not recorded, mechanic’s, materialmen’s, artisan’s, and other similar liens, vendor’s liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation.

. The language of that clause is set forth in full in the district court opinion. 425 F.Supp. at 466 n.10 We see no relevant distinction between that language and the language of paragraph 18 in the instant contract. In the Gennu-so case, the district court found the clause to create a security interest, but believed the interest to be adequately disclosed. The Third Circuit agreed with the district court’s determi *295 nation that a security interest was created, but reversed on the adequacy of disclosure.

. The full text of Public Position Letter No. 377 is as follows:
Sec. 226.4(a) Proceeds of loan used to pur-
226.8(b) chase insurance.
226.8(c)
July 22, 1970
As we understand the proposed plan, your client proposes to place literature in its loan offices concerning insurance to be sold by a company unrelated to your client. Applications for a single premium lifetime accidental death and dismemberment policy are available in each office and if a customer desires to purchase such a policy with the proceeds of his loan, a check will be sent directly to the company from your client in payment of the premium. While your client will not require the purchase of this insurance and the proceeds of the policy would in no circumstances be used to pay any portion of an unpaid balance of the loan, your client would be designated as owner of the policy during the term of the loan. In the event of the customer’s default, your client would have the right to cancel the policy and apply any premium refund to the unpaid balance of the loan.
Under the circumstances, we think it would be appropriate to disclose the loan company’s ownership of the policy as a type of “security interest” under Section 226.-8(b)(5) and disclosures need not be made under Section 226.4(a)(5). The amount of the premium would not be included in the “finance charge” nor would it be disclosed as an “other charge.”
Tynan Smith Assistant Director

. The creditor neither contends, nor could it contend, that paragraph 18, which creates the security interest and is found on the reverse side of the document, satisfies the disclosure requirement of Regulation Z. So far as relevant here, required disclosures must be made together “on the same side of the page and above the place for the customer’s signature.” 12 C.F.R. § 226.8(a)(1) (emphasis added). See Gennuso, supra, 566 F.2d at 441-42 and n. 13; see generally Charles v. Krauss Company, Limited, 572 F.2d 544 (5th Cir. 1978).

. Georgia has recently amended its definition of “proceeds” under the U.C.C. to provide specifically that “Insurance payable by reason of loss or damage to the collateral is proceeds . .” Ga.Code Ann. § 109A-9-306. (Acts 1978, eff. July 1, 1978) (emphasis added). This provision is in full accord with our reading of the contractual language.