Olga VALENCIA and Miguel Gonzalez,
Plaintiffs-Appellees,

v.

ANDERSON BROS. FORD and Ford
Motor Credit Company,
Defendants-Appellants.

No. 79–1950.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 11, 1980.

Decided March 20, 1980.

Rehearing and Rehearing In Banc
Denied April 22, 1980.

Aaron J. Kramer, Chicago, Ill., for defendants-appellants.

Alan A. Alop, Neighborhood Legal Services, Chicago, Ill., for plaintiffs-appellees.

Before SWYGERT, SPRECHER and CUDAHY, Circuit Judges.

SPRECHER, Circuit Judge.

Defendants, Anderson Brothers Ford and Ford Motor Credit Company (Ford), appeal from the district court's order finding them in violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* and Regu-

lation Z, 12 C.F.R. § 226.1 *et seq.*, and dismissing their counterclaim. This appeal presents three issues for our consideration. First, did defendants' failure to disclose an assignment of returned or unearned physical damage insurance premiums as a security interest violate the Act and Regulation Z. Second, if this court finds such a violation, should its ruling be given only prospective effect under the doctrine of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) Finally, did the district court properly dismiss without prejudice defendants' counterclaim for the balance of the debt allegedly owed by plaintiffs under the installment contract at issue in this case.

## I

On September 30, 1977, in connection with the purchase of a used 1974 Ford Pinto from Anderson Brothers Ford, the plaintiffs signed an Illinois Automobile Retail Installment Contract. This contract was subsequently assigned for value to Ford Motor Credit Company. The contract revealed that the plaintiffs were borrowing a sum of $1340.00, over a twenty-four month period, at an annual rate of interest of 21.40%. Record on Appeal, Document No. 14, Appendix A.

The contract contains on its face the following disclosure with respect to retention of security interests by the creditor:

Security Interest: Seller shall have a security interest under the Uniform Commercial Code in the Property (described above) and in the proceeds thereof to secure the payment in cash of the Total of Payments and all other amounts due or to become due hereunder.

Record on Appeal, Document No. 14, Appendix A. The reverse side of the contract contains a provision requiring the debtor to purchase and maintain physical damage insurance on the auto. While this insurance apparently may be purchased through the creditor and financed under the contract, the buyer is free to obtain such insurance elsewhere as well. Regardless of the source of the insurance, the contract provides that the debtor assigns to the creditor any returned or unearned premiums payable under the insurance policy. Such premiums may be used to purchase replacement insurance coverage or may be applied to the debt in the discretion of the creditor. Brief of Appellants at 9. In addition, the creditor is given authority to cancel the insurance policy and release or settle any claim with respect thereto.[1]

Plaintiffs contracted to purchase the required insurance through Ambassador Insurance Company at an annual premium of $442.00. Because the auto was permanently returned to Anderson Brothers due to mechanical problems on October 17, 1977, no payments were made by plaintiffs on

---

1. The contract provides, in pertinent part:
 RISK OF LOSS—INSURANCE
 The Property shall be at Buyer's risk. Buyer shall obtain and maintain at his own expense for so long as any amount remains unpaid hereunder insurance protecting the interests of Buyer and Seller against loss, damage or destruction of or to the Property in such forms and amounts as Seller may require.
 \* \* \* \* \* \*
 If Buyer fails to obtain or maintain such insurance, or fails to furnish satisfactory evidence thereof upon request, Seller may, but shall not be required to, and without prejudice to his rights hereunder if he does not, obtain such insurance protecting either the interests of Buyer and Seller or the interests of Seller only. In such event, Buyer agrees to reimburse Seller for the cost thereof forthwith upon demand together with interest thereon at the highest lawful contract rate.

 Buyer hereby assigns to Seller any monies payable under such insurance, by whomever obtained, including returned or unearned premiums, and Seller hereby is authorized on behalf of both Buyer and Seller to receive or collect same, to endorse checks or drafts in payment thereof, to cancel such insurance or to release or settle any claim with respect thereto. The proceeds from such insurance, by whomever obtained, shall be applied toward replacement of the Property or payment of the indebtedness hereunder in the sole discretion of Seller.
 Record on Appeal, Document No. 14, Appendix A. The contract goes on to provide that a failure to maintain the required insurance constitutes a default giving rise to the creditor's rights of acceleration and repossession. *Id.* ¶ 18.

either the insurance policy or the install-ment contract.[2] The policy was eventually cancelled for nonpayment of premiums.

On May 3, 1978, plaintiffs filed suit in the court below against Anderson Brothers and Ford, alleging various violations of the Truth in Lending Act, Regulation Z, and the Illinois Motor Vehicle Retail Install-ment Sales Act, Ill.Rev.Stat. ch. 121½, § 561 *et seq.*, including defendants' failure to dis-close the assignment of unearned insurance premiums as a security interest. On Octo-ber 31, 1978, the district court dismissed plaintiffs' complaint for failure to state a claim on which relief could be granted. The court specifically found that an assign-ment of returned or unearned insurance premiums was not a security interest and thus need not have been disclosed as such on the face of the contract.

Subsequent to its October 31 decision, the district court was informed of the July 28 decision of the Fifth Circuit in *Edmondson v. Allen-Russell Ford, Inc.*, 577 F.2d 291 (5th Cir. 1978), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1057 (1979). On the basis of that decision, the district court re-instated that portion of plaintiffs' com-plaint which pertained to disclosure of the assignment of unearned insurance premi-ums as a security interest. The district court entered summary judgment for the plaintiffs on this claim on June 5, 1979, finding itself in agreement with *Edmond-son* that an assignment of unearned insur-ance premiums is a security interest that must be disclosed under 15 U.S.C. § 1638(a)(10) and 12 C.F.R. § 226.8(b)(5). The court also dismissed plaintiffs' pendent state law claims. Defendants appeal from the district court's summary judgment or-der; plaintiffs do not appeal from the dis-missal of their other claims.

Defendants also appeal from the district court's dismissal of their counterclaim. The counterclaim, filed shortly after plaintiffs filed the complaint, sought to recover the balance due from plaintiffs on the install-ment contract. The district court dismissed the counterclaim without prejudice in its judgment entered June 15, 1979. No expla-nation was given for the dismissal.

## II

### A

 The federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, was enacted in 1968

> to assure a meaningful disclosure of cred-
> it terms so that the consumer will be able
> to compare more readily the various cred-
> it terms available to him and avoid the
> uninformed use of credit. . . .

15 U.S.C. § 1601. The Act does not regu-late consumer credit; rather, it requires disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction. *Mirabal v. General Mo-tors Acceptance Corp.*, 537 F.2d 871, 874 (7th Cir. 1976). The Act is to be liberally construed to ensure achievement of its goal of meaningful disclosure. *Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257, 262 (3d Cir. 1975).

One of the credit terms which must be disclosed under the Act is the retention or acquisition of any security interest by the creditor in a consumer credit transaction. 15 U.S.C. § 1638(a)(10).[3] The Act, however,

---

**2.** In the court below, defendants argued that plaintiffs' failure to pay the required premiums somehow foreclosed any finding of a violation of the Act or Regulation Z. The district court rejected this argument, finding the payment or nonpayment of premiums irrelevant. Defend-ants apparently do not contest this ruling on appeal. As our recent decision in *Bulger v. Thorp Credit Inc.*, 609 F.2d 1255 (7th Cir. 1979), indicates, the fact that a debtor may have no present interest in property in which a security interest is claimed is irrelevant for purposes of the disclosure requirements of the TILA and Regulation Z. 609 F.2d at 1257–58.

**3.** The statute provides, in pertinent part:

> (a) In connection with each consumer credit sale not under an open end credit plan, the creditor shall disclose each of the follow-ing items which is applicable:
>
> \* \* \* \* \* \*
>
> (10) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the prop-erty to which the security interest relates.
> 15 U.S.C. § 1638(a)(10). Regulation Z elabo-rates on this disclosure requirement as follows:

nowhere defines "security interest." The Federal Reserve Board, pursuant to the authority vested in it under 15 U.S.C. § 1604,[4] promulgated Regulation Z, 12 C.F.R. § 226.1 *et seq.*, which defines "security interest" as follows:

"Security interest" and "security" mean any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens whether or not recorded, mechanic's, materialmen's, artisan's, and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien or property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation.

12 C.F.R. § 226.2(gg). The issue before this court is whether this definition encompasses a debtor's assignment to a creditor of returned or unearned physical damage insurance premiums.

This court is not the first court of appeals to address this issue. Both the Third and Fifth Circuits have held that an assignment of unearned insurance premiums is a security interest which must be disclosed under the TILA and Regulation Z. See *Edmondson v. Allen-Russell Ford, Inc.*, 577 F.2d 291 (5th Cir. 1978), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1057 (1979); *Shanks v. Greenbriar Dodge, Inc.*, 577 F.2d 296 (5th Cir. 1978); *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437 (3d Cir. 1977).[5] *Ed-*

---

(b) Disclosures in sale and nonsale credit. In any transaction subject to this section, the following items, as applicable, shall be disclosed:

\* \* \* \* \* \*

(5) A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify. In any such case where a clear identification of such property cannot properly be made on the disclosure statement due to the length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage, deed of trust, or similar document evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable. If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.

12 C.F.R. § 226.8(b)(5).

4. Section 1604 provides:

The Board shall prescribe regulations to carry out the purposes of this subchapter. These regulations may contain such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith. 15 U.S.C. § 1604.

The regulations promulgated by the Federal Reserve Board pursuant to this authority are entitled to deference by the courts and will be upheld as long as reasonably related to the purposes of the Act. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369, 372, 93 S.Ct. 1652, 1660, 1662, 36 L.Ed.2d 318 (1973).

5. Defendants argue that *Gennuso* is not applicable in this case because it considered only the adequacy of disclosure of an assignment of unearned insurance premiums as a security interest and not whether such an assignment was a security interest at all. It is true, as defendants contend, that the *Gennuso* defendant conceded the assignment was a security interest for purposes of the Act. See *Gennuso v. Commercial Bank & Trust Co.*, 425 F.Supp. 461, 467 n.11 (W.D.Pa.1976). However, the district court in *Gennuso* did not rely solely on this concession in finding that the installment contract created a security interest in the unearned premiums; the court specifically held that a security interest had been created and relied on the concession only for extra support. 425 F.Supp. at 467 & n.11. The Third Circuit noted its specific agreement with "the district court's determination that [the contract's provisions] create a security interest in the . . . unearned premiums of the insurance policy . . . ." 566 F.2d at 440 n.2. Both courts apparently considered this threshold issue properly before them despite the concession.

*mondson* is particularly damaging to defendants' case in that the contract at issue there does not differ in any material respect from the one now before us. Defendants do not attempt to distinguish *Edmondson*, but rather argue that it was wrongly decided and should not be followed by this court.

The heart of the *Edmondson* opinion, and the part which draws the greatest fire from defendants, is the Fifth Circuit's reliance on federal law, in the form of Regulation Z, rather than state commercial law to define a security interest for purposes of the TILA's disclosure requirements. Defendants argue that prior decisions of this court indicate that state law is to determine whether a security interest has been created requiring disclosure under the Act. See *Basham v. Finance America Corp.*, 583 F.2d 918, 924 (7th Cir. 1978), *cert. denied,* 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89 (1979); *Tinsman v. Moline Beneficial Finance Co.*, 531 F.2d 815, 818 (7th Cir. 1976).[6] Close examination of *Basham* and *Tinsman* reveals, however, that this court looked to state law in those cases to determine the scope or extent of security interests clearly claimed by creditors, not to determine whether an unidentified interest was indeed a security interest. This court's recent decision in *Bulger v. Thorp Credit Inc.*, 609 F.2d 1255 (7th Cir. 1979), reveals that an interest may be a security interest for purposes of disclosure under the TILA even though it is not an enforceable security interest under state commercial law. *Id.* at 1257–58.[7]

The Fifth Circuit's decision in *Edmondson* followed *a fortiori* from its earlier ruling in *Elzea v. National Bank of Georgia*, 570 F.2d 1248 (5th Cir. 1978). In *Elzea*, the court held that state law characterizations of interests are not determinative for purposes of the disclosure requirements of the TILA. *Id.* at 1249–50. The court analyzed the rights conferred on the creditor by the contract to determine whether they fell within the Regulation Z definition of "security interest": "any interest in property which secures payment or performance of an obligation." 12 C.F.R. § 226.2(gg). This definition provides a straightforward, two-step approach to classification of interests for disclosure purposes. In both *Elzea* and *Ed-*

Viewed in this context, *Gennuso* is a relevant precedent in the action before us. The Fifth Circuit was of the same opinion in *Edmondson.* See 577 F.2d at 294–95 & n.7.

**6.** Defendants also cite *Croysdale v. Franklin Savings Ass'n*, 601 F.2d 1340 (7th Cir. 1979), as support for their contention that state law must be applied under the Truth in Lending Act. Reply Brief of Appellants at 10 n.*. This court looked to state law in *Croysdale* because of the Federal Reserve Board's deference to state rules of computation for certain transactions. 601 F.2d at 1347. We specifically noted that Congress did not intend to incorporate conflicting and uncertain state law rules into the Act. The state rules of computation were properly consulted in that case because the substantive law of the state involved "[did] not subvert the purposes of the Act or Regulation." *Id.*

**7.** Defendants suggest that *Butner v. U. S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), requires this court to apply state law to determine whether a particular interest is a security interest for purposes of the TILA. In *Butner*, the Supreme Court held that state law is to determine whether a mortgagee has a security interest in certain rents and profits, for purposes of the federal Bankruptcy Act. *Id.* at

54–55, 99 S.Ct. at 917–918. *Butner* is not applicable here for several reasons. First, an interpretation of the Bankruptcy Act sheds little light on the proper interpretation of the TILA; the two statutes differ fundamentally in nature and purpose. Second, the definitions applied for purposes of the Bankruptcy Act determine the enforceability of creditors' rights; under the TILA, definitions control only disclosure, not enforceability of substantive interests. Indeed, a principal concern in *Butner* was that a federal definition conferred property rights not conferred by state law, *id.* at 56, 99 S.Ct. at 918, in the TILA context, state law continues to govern the substantive aspects of property interests, while federal law merely classifies interests for disclosure purposes. There is thus no federal encroachment upon areas traditionally governed by state law. Finally, even under the *Butner* rule, state law is to govern "[u]nless some federal interest requires a different result." *Id.* at 55, 99 S.Ct. at 918. The federal interest in uniform disclosure of credit terms requires a uniform federal definition of the terms to be disclosed. See, e. g., *Mason v. General Finance Corp.*, 542 F.2d 1226, 1231, 1233 (4th Cir. 1976). Regulation Z provides such a uniform federal definition.

*mondson*, the Fifth Circuit applied this two-step approach and found that the interests involved were security interests for TILA purposes.[8]

■ The *Elzea* analysis, which focuses on the nature of the substantive rights conferred on a creditor rather than on state law characterizations of those rights, was recently endorsed and applied by this court in *Bulger, supra*, 609 F.2d at 1258–59. This approach to the definition of "security interest" is reasonable, straightforward in application and furthers the federal interest in uniform disclosure of terms and conditions of consumer credit transactions. See *Edmondson, supra*, 577 F.2d at 295. We will accordingly continue to follow this approach.[9]

■ State law is not necessarily to be ignored in determining whether a creditor's interest is a security interest for TILA purposes. Indeed, the Regulation Z definition of "security interest" lists a variety of security devices recognized under state law as examples of security interests under the Act. 12 C.F.R. § 226.2(gg). As post-*Edmondson* decisions addressing the precise issue before us recognize, state law can indicate whether a creditor possesses an interest in property securing performance of an obligation; if such an interest is found to exist, federal law defines it as a security interest. See *Hernandez v. O'Neal Motors, Inc.*, 480 F.Supp. 491 at 494 (D.N.M. 1979); *Arias v. Albuquerque National Bank*, No. 78–532 (D.N.M. Jan. 5, 1979), memo. op. at 6–8. A creditor's substantive rights are still governed by state law; federal law merely classifies those rights for disclosure purposes.

■ Application of the Regulation Z definition of "security interest" in this case, as in *Edmondson*, poses no special problems. It is not seriously disputed that the assignment of unearned insurance premiums con-

---

**8.** In both *Elzea* and *Edmondson*, the Fifth Circuit referred to the creditor's interest as a valuable economic right or privilege. *Edmondson, supra*, 577 F.2d at 294; *Elzea, supra*, 570 F.2d at 1250. Defendants and amici focus upon these references as if they formed the basis for the *Elzea* and *Edmondson* decisions. Our reading of the cases, however, reveals that these references were no more than additional support for the conclusions reached by application of the Regulation Z definition. We do not read *Elzea* and *Edmondson* to hold, as amici and defendants suggest, that a valuable privilege in the hands of a creditor, without more, is a security interest for purposes of the Act.

**9.** Our research discloses that every federal court to consider whether an assignment of unearned insurance premiums is a security interest for TILA purposes since *Edmondson* has expressed agreement with that decision. See *Arias v. Albuquerque National Bank*, No. 78–352 (D.N.M. Jan. 5, 1979); *Hernandez v. O'Neal Motors, Inc.*, 480 F.Supp. 491 (D.N.M.1979); *Murphy v. Ford Motor Credit Co.*, 477 F.Supp. 59 (E.D.Mo.1979). The *Murphy* case does not specifically mention unearned insurance premiums; rather, it refers to "any monies payable" under the insurance policy. The court's citation of *Edmondson* as support for its conclusion, however, suggests that an assignment of unearned premiums was encompassed within the assignment of "any monies payable."

Defendants urge us to reject the three court of appeals and three district court decisions which adopt a position contrary to their own in favor of "better-reasoned case law." This "better-reasoned case law" consists of *Rounds v. Community National Bank*, 454 F.Supp. 883 (S.D.Ill.1978) and *James v. Ford Motor Credit Co.*, No. 78–F–647 (D.Colo. Aug. 21, 1978). Neither decision persuades us to reject *Edmondson* and its progeny.

*James* is unconvincing because it specifically addresses only an assignment of insurance proceeds and does not refer to unearned premiums. While this may be analogous to the issue before us, it is hardly persuasive in the face of decisions which are directly on point. *Rounds*, on the other hand, does deal with an assignment of unearned premiums and finds that it is not a security interest under Illinois law and thus need not be disclosed. 454 F.Supp. at 887–88. The *Rounds* decision has been criticized for its apparent misinterpretation of *Mims v. Dixie Finance Corp.*, 426 F.Supp. 627 (N.D.Ga.1976), a decision on which it heavily relies. See *Hernandez, supra*, 480 F.Supp. at 494; *Arias, supra*, memo. op. at 8–9. Even if the *Rounds* interpretation of *Mims* were correct, reliance on *Mims*, a decision from the Fifth Circuit, is inappropriate after *Edmondson* and *Shanks*. *Rounds* nowhere mentions the specific definition of "security interest" contained in Regulation Z, 12 C.F.R. § 226.2(gg), when, in fact, that definition should be the starting point for any analysis of the question. In light of these factors, we cannot agree with defendants' contention that *Rounds* and *James* represent "better-reasoned case law."

fers on the creditor an interest in property. Even defendants refer to the assignment as an "incidental interest in property." Brief of Appellants at 8. Whether incidental or not, we agree with the Fifth Circuit that such an assignment is an interest in property. 577 F.2d at 294. Similarly, we agree that this property interest secures the performance or payment of an obligation. The assigned premiums may be used, in the sole discretion of the creditor, to purchase replacement insurance coverage or to pay part of the debtor's indebtedness. In either case, the assignment secures an obligation of the debtor.[10] *Id.* at 294. The creditor has the authority to cancel the insurance and cause payment of unearned premiums to itself at any time. The contract clearly gives the creditor an interest in property which secures performance of a debtor's obligations. Such an interest is by definition a security interest for TILA purposes, 12 C.F.R. § 226.2(gg), and as such must be disclosed. Defendants do not suggest that such disclosure was made in the contract before us.

■ We reach this conclusion despite the protests of defendants and amici that such an interpretation of the TILA upsets established industry practice and will cause extreme hardship for what is, at worst, a purely technical violation. While industry practice can be a useful guide in defining terms used in the TILA in the absence of a definition in the statute or Regulation Z, *Johnson v. McCrackin-Sturman Ford, Inc.,* 527 F.2d 257, 265–66 (3d Cir. 1975), reliance on industry practice is misplaced where, as in this case, a term is clearly defined in the regulation or the Act. As for the imposition of undue hardship on the industry as a result of a purely technical violation of the Act, we repeat our recent observation:

> Congress did not intend that creditors should escape liability for merely technical violations. . . . [W]hile it may be true, in some sense, as the creditors have argued, that the terminological violations here are inconsequential, the fact remains that they are violations. Any misgivings which creditors may have about the technical nature of the requirements should be addressed to Congress or to the Federal Reserve Board, not to the courts.

*Smith v. No. 2 Galesburg Crown Finance Corp.,* 615 F.2d 407, 416 (7th Cir. 1980), *citing Gennuso v. Commercial Bank & Trust Co.,* 566 F.2d 437 (3d Cir. 1977). See also *Kessler v. Associates Financial Services Co.,* 573 F.2d 577, 578 (9th Cir. 1977).

We therefore affirm the district court's ruling that an assignment of unearned or returned insurance premiums in a consumer credit installment contract is a security interest for purposes of disclosure under the TILA. This result is consistent with the liberal interpretation to be given the Act, the majority of federal court decisions addressing the issue, and a Federal Reserve Board staff interpretation of a closely analogous issue.[11] In view of the interest in uniformity in TILA disclosures and in the

---

**10.** Indeed, defendants concede the assignment is intended to ensure that the insurance coverage which the debtor is obliged to obtain is maintained through the life of the installment contract. They state in their brief:

> Under the assignment provision in the Contract, if the physical damage insurance policy on the vehicle is cancelled, any unearned premiums will be used to provide replacement insurance coverage or applied to the debt.
>
> \* \* \* \* \* \*
>
> The purpose of an assignment of unearned premiums in physical damage insurance is to assure the continued existence of the insurance on the vehicle during the life of the loan. Without the protection of such an assignment, debtors could cancel such insurance on

financed vehicles in order to obtain the return of unearned insurance premiums, thereby causing lenders to lose insurance protection on the real "security" for such loans— the financed vehicles themselves.

Brief of Appellants at 9. The contract provides that the debtor's failure to maintain this insurance is, like a failure to pay the indebtedness, a default giving rise to creditor's remedies for default. Record on Appeal, Document No. 14, Appendix A, ¶ 18.

**11.** FRB Public Position Letter No. 377 (July 22, 1970). This letter is reproduced in full in *Edmondson v. Allen-Russell Ford, Inc.,* 577 F.2d 291, 295 n.8 (5th Cir. 1978), *cert. denied,* 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1057 (1979).

absence of any persuasive argument to the contrary, we decline to break with the Third and Fifth Circuits on this issue.

**B**

Alternatively, defendants argue that even if an assignment of unearned insurance premiums must be disclosed as a security interest, they have an absolute defense, under section 1640(f), to liability under the TILA because they acted in good faith in conformity with published interpretations of the Federal Reserve Board. Section 1640(f) provides:

No provision of this section or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 U.S.C. § 1640(f). Defendants contend that the district court erred in rejecting this defense as a matter of law. They allege several specific errors to support this contention. First, the district court required that they prove actual reliance on a Federal Reserve Board regulation or interpretation, whereas section 1640(f) only requires "conformity with" such authority. Second, defendants' good faith is an issue of material fact under section 1640(f), thereby precluding summary judgment. Finally, the court, in rejecting the defense, addressed only one of the interpretations cited by defendants, ignoring defendants' conformity with other interpretations and Regulation Z itself.

■ We need not address defendants' first two objections,[12] because they failed in the district court and this court to make the threshold showing required under section 1640(f). To avoid summary judgment, a defendant relying on section 1640(f) may not rest on a conclusory allegation that it acted in conformity with Board interpretations. The defendant must point to specific regulations or interpretations which support its position. *Arias v. Albuquerque National Bank,* No. 78–532 (D.N.M. Jan. 5, 1979), memo. op. at 4; *Gillard v. Aetna Finance Co.,* 414 F.Supp. 737, 749 (E.D.La. 1976). Defendants have been unable to identify any such regulations or interpretations.

■ Defendants direct us to three sources as the foundation of their section 1640(f) defense. First, they argue that they acted in conformity with the Regulation Z definition of "security interest." 12 C.F.R. § 226.2(gg). As they read this provision, it does not include mere "incidental interests" such as that involved in this case. It is clear, however, that a creditor's mistaken interpretation of Regulation Z, even if honest and reasonable, is not a defense under section 1640(f). *Kessler v. Associates Financial Services Co.,* 573 F.2d 577, 579 (9th Cir. 1977).

Defendants also cite several official Board interpretations as support for their position that state law must be consulted to determine whether a security interest has been created. See 12 C.F.R. § 226.202; Official Staff Interpretation FC–0023, Appendix to 12 C.F.R. at 606–07; Official Staff Interpretation FC–0071, Appendix to 12 C.F.R. at 642–43; Official Staff Interpretation FC–0095, Appendix to 12 C.F.R. at 657–59. None of these interpretations concern interests even remotely similar to an assignment of unearned insurance premi-

12. This circuit has not yet determined whether actual reliance is required under section 1640(f) or whether accidental conformity is sufficient. See *Basham v. Finance America Corp.,* 583 F.2d 918, 923 n.7 (7th Cir. 1978), *cert. denied,* 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89 (1979). Other circuits have required actual reliance. See, e. g., *Ives v. W. T. Grant Co.,* 522 F.2d 749, 758 (2d Cir. 1975). At any rate, it is not at all clear that the district court required proof of actual reliance.

ums. Furthermore, as discussed in the margin, the interpretations do not stand for the proposition that the definition of "security interest" for purposes of the TILA is to be governed by state commercial law.[13] Defendants cannot rely on these interpretations to support their section 1640(f) defense.

 Finally, defendants refer to Federal Reserve Board Staff Opinion No. 1263, CCH Cons. Cred. Guide ¶ 31,736 (Nov. 23, 1977). While this interpretation might be said to support defendants' position,[14] it is insufficient for section 1640(f) purposes for two reasons. First, it is an unofficial interpretation. This court has specifically held that conformity with unofficial staff opinion letters will not satisfy section 1640(f). *Basham v. Finance America Corp.,* 583 F.2d 918, 925 (7th Cir. 1978), *cert. denied,* 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89 (1979). Second, Opinion No. 1263 was issued after execution of the contract at issue here. A creditor cannot claim to have acted in conformity with an interpretation issued after the relevant transaction has been completed. *McGowan v. Credit Center of North Jackson, Inc.,* 546 F.2d 73, 77 (5th Cir. 1977). Thus, Opinion No. 1263 is of little use to the defendants in this case.

The district court properly rejected defendants' section 1640(f) defense as a matter of law. Defendants' failure to identify specific official Board interpretations or regulations which supported their position was fatal to this defense and rendered unnecessary any inquiry as to defendants' good faith or actual reliance. We accordingly affirm the district court's ruling that

defendants violated the TILA and Regulation Z.

### III

 Defendants contend that if this court decides to affirm the district court's judgment, as it has, the ruling should be given only prospective effect except as to the plaintiffs. The circumstances under which a judicial decision will be denied full retroactive effect are defined in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971):

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . .. Second, it has been stressed that "we must * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

404 U.S. at 106–07, 92 S.Ct. at 355 [citations omitted]. Because prospective-only application is the exception rather than the rule, the party seeking to invoke *Chevron Oil* bears the burden of proving that such limited application is justified. *Jimenez v. Wein-*

---

13. Interpretation FC–0023 does not address the definition of "security interest"; rather, it concerns only the adequacy of disclosure of an interest admitted to be a security interest. Interpretation FC–0071 concerns the adequacy of disclosure of a security interest; state law is relevant not to the creation of the security interest but only to its scope. The interpretation at 12 C.F.R. § 226.202 examines state law as to the substantive effect of judgment clauses and cognovit provisions. Such provisions are then classified as security interests according to their substantive effect under state law; this

is precisely the *Elzea-Edmondson* approach adopted here. Finally, FC–0095 is a complex discussion of disclosure of security interests in consumer leasing transactions which neither clearly supports nor clearly refutes defendants' position.

14. One court which addressed this precise contention found that Opinion No. 1263 did not support such a position and that it was not at all inconsistent with the result in *Edmondson.* See *Hernandez v. O'Neal Motors, Inc.,* 480 F.Supp. 491 at 494, 495, 496 (D.N.M.1979).

berger, 523 F.2d 689, 704 (7th Cir. 1975), cert. denied, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976). All three of the factors listed in *Chevron. Oil* must be shown to favor prospective-only application before a decision will be denied retroactive effect. *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1294 (7th Cir. 1975), cert. denied, 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976).

The defendants have failed to bear their burden on this issue. They have convinced this court neither that our decision overrules clear past precedent nor that it resolves an issue of first impression whose resolution was not clearly foreshadowed. At the time the parties entered the transaction at issue here, only one lower court decision clearly supported defendants' position. *Shanks v. Greenbriar Dodge, Inc.,* No. C75–1154A (N.D.Ga. Dec. 16, 1976), rev'd, 577 F.2d 296 (5th Cir. 1978). Another decision in the same district had reached the opposite result, holding that an assignment of unearned insurance premiums was a security interest for TILA purposes. *Edmondson v. Allen-Russell Ford, Inc.,* C75–940A (N.D.Ga. Apr. 29, 1976), aff'd, 577 F.2d 291 (5th Cir. 1978), cert. denied, 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1057 (1979). Similarly, the district court in *Gennuso v. Commercial Bank & Trust Co.,* 425 F.Supp. 461 (W.D.Pa.1976), rev'd, 566 F.2d 437 (3d Cir. 1977), prior to the transaction in this case, had ruled that such an assignment created a security interest; the court imposed no liability, however, because it found the disclosure in that case adequate. In addition, the only relevant Federal Reserve Board interpretation issued prior to this transaction, Public Position Letter No. 377 (July 22, 1970), counselled disclosure of an analogous assignment as a security interest. The decisions on which defendants place the greatest reliance, *Rounds v. Community*

National Bank, 454 F.Supp. 883 (S.D.Ill. 1978) and *James v. Ford Motor Credit Co.,* No. 78–F–647 (D.Colo. Aug. 21, 1978), were both decided after the instant contract was executed and thus cannot be clear prior precedent on which defendants may have relied.

■ Our examination of these authorities reveals that, at the time of the execution of the contract in this case, clear precedent did not support defendants' interpretation of the TILA. In fact, the weight of authority, such as it was, favored the opposite interpretation. At the present time, the weight of authority, now quite substantial, is in accord with the result reached in this case. It likewise cannot be said that this decision resolves an issue of first impression in a manner not foreshadowed by earlier authorities. The issue, while before this court for the first time, had been considered by several federal courts prior to the instant transaction. At least one of those decisions, the district court's opinion in *Edmondson,* reached the result reached here. One other decision, by the district court in *Gennuso,* differs from our decision in this case only on the issue of adequacy of disclosure, not on whether the assignment created a security interest. The Federal Reserve Board's resolution of a closely analogous issue in Public Position Letter No. 377 suggested the same result. To say that our decision in this case resolved an issue of first impression in a manner not foreshadowed by earlier authorities is to ignore reality.[15]

■ Having decided that our ruling in this case establishes no new principle of law, it is unnecessary to address the remaining prongs of the *Chevron Oil* test. *Jordan v. Weaver,* 472 F.2d 985, 996 (7th Cir. 1973), rev'd on other grounds sub nom.

15. Defendants cite *McDaniel v. Fulton National Bank,* 571 F.2d 948 (5th Cir. 1978) (en banc) as proof that prospective-only application of judicial decisions interpreting the TILA is sometimes appropriate. *McDaniel,* while it may stand for that proposition, also indicates the limited circumstances in which such application, will be decreed. Prospective application

was ordered in *McDaniel* because the Fifth Circuit's decision in that case overruled an earlier decision by a panel of the same court. See *Martin v. Commercial Securities Co.,* 539 F.2d 521 (5th Cir. 1976). *McDaniel* is a far cry from the present case in which defendants can point to no clear rule in this or any other circuit on which they may have relied.

*Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Nonetheless, we note that defendants have failed to persuade us that retroactive application of our ruling will retard the operation of the TILA or cause undue hardship. The Act requires disclosure of security interests as defined by Regulation Z. Our ruling merely implements that requirement. It does not disturb any clear rulings or precedents on which defendants may have relied to their detriment. We can see no inequity in its retroactive application.[16] We find, therefore, that prospective-only application of our decision in this case under the *Chevron Oil* doctrine is inappropriate. Defendants have failed to convince this court that any of the three *Chevron Oil* factors are present in this case.

### IV

■ Defendants' final contention is that the district court erred in dismissing Ford's counterclaim for the balance allegedly owed by plaintiffs under the installment contract. Ford argues that dismissal was improper because the counterclaim is compulsory under Fed.R.Civ.P. 13(a).[17] It is clear that a compulsory counterclaim is within the ancillary jurisdiction of a district court and thus can proceed to trial even where the plaintiff's claim is disposed of prior to trial.

*Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1359 (5th Cir. 1979). A permissive counterclaim, however, cannot be entertained in federal court absent an independent basis for federal jurisdiction. *Whigham v. Beneficial Finance Co.,* 599 F.2d 1322, 1323 (4th Cir. 1979). There is no independent basis for jurisdiction over Ford's counterclaim in this case, so the issue is whether the counterclaim is permissive or compulsory.

There is a conflict between the Fourth and Fifth Circuits on this issue. The Fourth Circuit, in *Whigham, supra,* held that while a TILA claim and a debt counterclaim may, in a technical sense, arise from the same loan transaction, the two claims bear no logical relationship to one another. A debt counterclaim "has none of the characteristics associated with a compulsory counterclaim," 599 F.2d at 1323, and thus is permissive rather than compulsory. The Fifth Circuit has taken the opposite view. In *Plant, supra,* the court found that the claims are obviously interrelated and derived from a common factual basis; they are, therefore, logically related. On this basis the court held that a debt counterclaim is compulsory in a debtor's TILA suit. 598 F.2d at 1363–64. Both courts acknowledged that the majority of district courts to have considered the issue have ruled that

16. As plaintiffs point out, defendants are not in an ideal position to claim that retroactive application of our ruling will cause undue hardship. Ford Motor Credit was a defendant in the *Edmondson* litigation. Ford learned on July 28, 1978, when *Edmondson* was decided by the Fifth Circuit, that at least one court of appeals considered its failure to disclose an assignment of unearned insurance premiums as a security interest a violation of the TILA. Despite this decision, Ford continued to use, in other circuits, a form contract which had been held to violate the Act in the Fifth Circuit. Ford was certainly entitled to do so since *Edmondson* was not the law in other circuits. However, in doing so Ford was gambling that its view of the law would prevail over the *Edmondson* view in subsequent suits. The fact that Ford now faces the consequences of losing its conscious gamble hardly presents a case of inequitable hardship. If the relevant provisions of Ford's contract had been modified in accordance with *Edmondson* within a reasonable time after that decision, Ford would be immune from any ad-

ditional liability for this violation of the Act by virtue of the Act's one year statute of limitations. 15 U.S.C. § 1640(e). The *Chevron Oil* doctrine is not directed at insulation of litigants from the consequences of their conscious business decisions; rather, its purpose is to avoid the hardship which can result from retroactive application of decisions which represent sudden, unexpected shifts in the law. This is not such a case.

17. Rule 13(a) provides in pertinent part:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

\* \* \* \* \* \*

Fed.R.Civ.P. 13(a).

debt counterclaims are permissive. See *Plant, supra,* 598 F.2d at 1361; *Whigham, supra,* 599 F.2d at 1323–24 n.*.[18]

 The Fourth and Fifth Circuits both applied the "logical relationship" test to the debt counterclaims before them. This court considers the logical relationship test crucial in determining whether a claim and counterclaim arise from the same transaction or occurrence for purposes of Rule 13(a). We have observed that whether a particular counterclaim should be considered compulsory depends not so much on the immediacy of its connection with the plaintiff's claim as upon its logical relationship to that claim. *Warshawsky & Co. v. Arcata National Corp.,* 552 F.2d 1257, 1261–63 (7th Cir. 1977). This test is to be applied flexibly in order to further the policies of the federal rules in general and Rule 13(a) in particular. *Id.* at 1261.

In *Plant, supra,* the Fifth Circuit analyzed the reasoning employed by many district courts to hold debt counterclaims permissive even where a literal application of the language of Rule 13(a) would suggest the opposite result. The primary concern of these courts was that enforcement of the TILA would be impaired if debt counterclaims were compulsory because TILA plaintiffs would often be faced with counterclaims exceeding their potential recovery under the Act. In addition, TILA claims could not be expeditiously resolved if courts were entangled in the state law issues raised by debt counterclaims, 598 F.2d at 1361. The Fifth Circuit found that these and other concerns were outweighed by the interests in judicial economy and in providing complete relief to a defendant in a single lawsuit. *Id.* at 1363–64.

We disagree with the Fifth Circuit's analysis. The sole connection between a TILA claim and a debt counterclaim is the initial execution of the loan document. A flexible application of the logical relationship test reveals that this connection is so insignificant that compulsory adjudication of both claims in a single lawsuit will secure few, if any, of the advantages envisioned in Rule 13(a). As one court analyzed this issue:

> The link is credit extension, a fact established on the face of the pleadings, but the federal claim and state counterclaim do not stand on common ground when realistically assessed; the critical legal inquiry into each "half" of the controversy is so distinct that the parties' disputes are actually fragmented whether pursued through two actions or as separate aspects of one. In these circumstances, wooden application of the common transaction label does not yield real judicial economy; any perceived logical nexus is conceptual, abstract, a formal characterization rather than a recognition of concrete advantage to be achieved through single forum adjudication of all the parties' opposing claims. Even if inappropriate to weigh in the balance those policy considerations against federal court intervention, . . . in examining the state law counterclaim for purposes of Rule 13 this Court need not disregard the crucial factor of practical importance that the truth in lending complaint and debt counterclaim lack any shared realm of genuine dispute.

*Ball v. Connecticut Bank & Trust Co.,* 404 F.Supp. 1, 4 (D.Conn.1975) [citation omitted].

 The TILA claim and debt counterclaim raise different legal and factual issues governed by different bodies of law. A TILA suit for inadequate disclosure, such as the instant case, can often be resolved by an examination of the face of the loan document. A debt counterclaim, on the other hand, can raise the full range of state law contract issues.[19] The two claims do not, as the Fifth Circuit held, spring from the same "aggregate of operative facts."

---

18. Both *Plant* and *Whigham* list the relevant lower court opinions. See *Plant, supra,* 598 F.2d at 1361–64, 1363 nn.10, 11; *Whigham, supra,* 599 F.2d at 1323–24 n.*.

19. It is true, as the Fifth Circuit observed, that a district judge is presumed competent to resolve such state law issues. *Plant, supra,* 598 F.2d at 1363, 1364. However, the fact that

*Plant, supra*, 598 F.2d at 1361. The rights and obligations of the parties with respect to the two claims hinge on different facts and different legal principles. We concur in the Fourth Circuit's characterization of the relationship between the claims:

The lender's counterclaim alleges simply that the borrower has defaulted on a private loan contract governed by state law. The borrower's federal claim involves the same loan, but it does not arise from the obligations created by the contractual transaction. [citation omitted] Instead, the claim invokes a statutory penalty designed to enforce federal policy against inadequate disclosure by lenders.

*Whigham, supra*, 599 F.2d at 1324. Such claims are not logically related to one another and resolution of both in a single suit will not further the purposes of Rule 13(a).

Similarly, we concur in the Fourth Circuit's observation that permitting a creditor to "use the federal proceedings as an opportunity to pursue private claims against the borrower would impede expeditious enforcement of the federal penalty . . ." *Id.* at 1324. In the absence of a relationship between the claims which will further the purposes of Rule 13(a), we decline to employ a mechanical interpretation of that rule in a way which will impede enforcement of an important federal statute. The result reached by the Fourth Circuit is consistent with prior decisions of this court [20] and the flexible approach to Rule 13(a) mandated in this circuit. Ford's counterclaim was dismissed without prejudice, so it is free to pursue its claim in state court. Accordingly, we affirm the district court's dismissal of Ford's counterclaim.

Having considered defendants' arguments and finding all without merit, we affirm the judgment appealed from in all respects.[21]

## CUDAHY, Circuit Judge, concurring.

Judge Sprecher's opinion for the panel is exemplary in its logic, learning, legal analy-

---

these issues can be capably resolved in a single suit does not indicate that they are best resolved in a suit raising federal claims unrelated to the substance of the loan agreement or any question of performance or default.

20. The Fourth Circuit in *Whigham* found that this court's decision in *Basham v. Finance America Corp.*, 583 F.2d 918 (7th Cir. 1978), *cert. denied*, 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89 (1979), supported its conclusion. 599 F.2d at 1323 n.*, 1324. In *Basham*, we noted, in a different context, that a "TILA claim is not directed at or an answer to the underlying debt." 583 F.2d at 928. We also acknowledged that some district courts had found TILA claims and the underlying debt "not so related as to be the subject of a compulsory counterclaim . . . ." *Id.* at 928 n.18.

It is also interesting to note that in this portion of the appeal defendants ignore *Rounds v. Community National Bank*, 454 F.Supp. 883 (S.D.Ill.1978), on which they relied so heavily elsewhere. In *Rounds*, the court dismissed the lender's counterclaim, observing that:

This court has consistently held that a counterclaim upon the underlying credit obligation is not a compulsory counterclaim in a TILA action.

*Id.* at 890.

21. We have examined *Ford Motor Credit Co. v. Milhollin*, ─ U.S. ─, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), cited by defendants pursuant to Circuit Rule 11. As defendants state,

*Milhollin* shows the critical importance of having a formal FRB interpretation that creditors may unhesitatingly rely upon as a complete defense under Section 1640(f) of the Act, . . .

In *Milhollin*, an official interpretation issued by the Board's staff directly supported the position taken by the defendant creditors. The Supreme Court found that section 1640(f) of the Act signalled a congressional decision to treat such official interpretations, whether by the Board or its staff, as authoritative. See ─ U.S. at ─, 100 S.Ct. at 797, & n.9. This "special status" was not, however, conferred under section 1640(f) upon unofficial interpretations. See *id.* at ─ U.S. at ─, 100 S.Ct. 797 n.10. In the present case, there is no official interpretation by the Board or its staff as to the proper treatment of an assignment of unearned insurance premiums. That such an interpretation might be desirable or even "critical" from the credit industry's viewpoint does not alter the fact that no official Board interpretation supports defendants' position in this case. The Board's failure to issue an official interpretation does not indicate that our ruling should be given only prospective effect. That decision is governed by the *Chevron Oil* criteria discussed in Part III, *supra*. Our examination of those criteria reveals that this is not an appropriate case in which to issue a prospective ruling. *Milhollin* does not require a different result.

sis and lucidity of expression. But I do not read it as seriously suggesting that the result we reach furthers the underlying purposes of the Truth in Lending Act. Among these meritorious purposes are the disclosure to buyers of the costs of credit and the alerting of customers to the possibility that their property may be reached to satisfy the obligation which they have incurred.

Here we require the prominent disclosure of a rather esoteric right to unearned premiums for physical damage insurance (protecting both the seller's and the buyer's interest in the property), which may be used to provide replacement insurance coverage or applied against the buyer's debt in the event of cancellation of the insurance. This "security interest" is normal in the circumstances but is entirely incidental to the principal consumer credit transaction. Primarily, it assures maintenance of the insurance and is not necessarily even related to default on the principal debt.

To disclose this "security interest" on the *face* of the contract (which is the point here) is merely to add virtually inconsequential information—lengthening, complicating and trivializing the disclosure for no apparent benefit.

As Senator Proxmire has said:

"As sponsor of the original Truth in Lending Act I am becoming more and more concerned that its beneficial purposes are being frustrated by unnecessarily complex disclosure requirements which consumers may ignore or fail to understand.

"In addition, the very complexity of the requirements may impose significant costs and other burdens on creditors despite their good faith efforts to comply with the law." 122 Cong.Rec. 23609 (1976).

I concur today with this Court's good faith efforts to apply (or comply with) the law, but I feel some concern about the purposes for which we are laboring. I hope that the important ends of credit disclosure will not be obscured in a whirl of litigious gamesmanship.

SWYGERT, Circuit Judge, concurring.

Judge Sprecher's impeccable logic compels me to concur in his opinion and to approve the result we announce. I do so reluctantly, however, because of the concerns—which I share—that are expressed by Judge Cudahy in his concurrence.